**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

ISAAC GRAY                                              *

                                                    *

v                                                       *          Civil Action No. CCB-15-29

J. MICHAEL STOUFFER and                                 *
THE ATTORNEY GENERAL OF THE
STATE OF MARYLAND                                       *

                                                    *
                                                   ***

## MEMORANDUM

By order dated November 16, 2015, the above-captioned petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 was stayed pending petitioner's exhaustion of state remedies. (ECF No. 25). The stay was lifted on March 2, 2016, upon representation by petitioner that he no longer had state proceedings pending. (ECF No. 29). The stay was reinstated on May 6, 2016, when it became clear petitioner still had an application for leave to appeal pending in the Maryland Court of Special Appeals. (ECF No. 35). The stay was again lifted on June 20, 2016, upon receipt of evidence that appellate review had concluded. (ECF No. 41). The parties have further briefed the issues pending before this court. (ECF Nos. 42 & 43). No hearing is deemed necessary for the matters pending. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2016); *see also Fisher v. Lee*, 215 F. 3d 438, 455 (4th Cir. 2000) (holding that petitioner was not entitled to a hearing under 28 U.S.C. §2254(e)(2)).

### Background

Petitioner was convicted by a jury of first degree rape and battery in the Circuit Court for Howard County on April 24, 1986. On July 18, 1986, petitioner was sentenced to serve life for

the first degree rape and a five year concurrent term for battery.  Petitioner filed an appeal to the

Court of Special Appeals alleging that discriminatory peremptory challenges were used to

eliminate black jurors. *See Gray v. State*, 317 Md. 250, 562 A. 2d 1278, 1280 (1989).  The Court

of Special Appeals remanded the case with instructions to determine if petitioner had enough

evidence for a prima facie showing of racial discrimination.  *Id*.  The lower court held that

petitioner had failed to make such a showing and petitioner appealed.  *Id*.  Petitioner's appeal

was denied and his convictions affirmed by the Court of Special Appeals on July 18, 1988.  The

Court of Appeals granted his petition for writ of certiorari and affirmed the conviction on

September 8, 1989.  *See Gray v. Sowers, et al.*, Civil Action No. CCB-07-1095 (D. Md. 2007)

(denying habeas petition as successive); *see also Gray v. Gee*, Civil Action No. CCB-97-332 (D.

Md. 1997) (denying habeas relief for failure to exhaust claims).

The instant petition was filed following the Fourth Circuit Court of Appeals' decision

granting petitioner leave to file a second or successive petition under 28 U.S.C. §2244(b)(3)(C).

(ECF No. 1 at 1 (*In re: Isaac Gray*, No. 14-478 (4th Cir. December 18, 2014))).  In the motion

filed with the Fourth Circuit, petitioner asserted that "newly discovered evidence from the U.S.

Department of Justice and the Office of the Inspector General creates a credible showing of

actual innocence and allows the petitioner to pursue his constitutional claims on the merits

notwithstanding the existence of a procedural bar to relief."  (*In re: Isaac Gray*, No. 14-478 at 2,

ECF No. 1-1).  The newly discovered evidence pertains to a memorandum issued by the United

States Department of Justice concerning testimony provided by FBI laboratory examiners in

criminal cases prior to 1999.  (*Id.* at 6). The memorandum noted that in some cases "the FBI

laboratory examiners exceeded the limits of science by overstating the conclusions that may

appropriately be drawn from a positive association between evidentiary hair and a known hair sample." (*Id*. at 6–7).

In petitioner's case, FBI Special Agent Michael Malone testified at trial regarding microscopic hair analysis. (*In re: Isaac Gray*, No. 14-478 at 4, n. 2). Petitioner asserts in his memorandum in support of the petition filed in this court that reliance on Malone's testimony, which he characterizes as perjured, constituted a miscarriage of justice and calls into question the validity of the outcome of his trial. He further claims that his trial transcripts were improperly withheld from him by the State when it erroneously claimed they had been destroyed and consequently prohibited him from presenting this claim in post-conviction proceedings. (*In re: Isaac Gray*, No. 14-478 at 5).

State Court Proceedings

On April 16, 2013, petitioner filed his third motion to re-open post-conviction proceedings in the Circuit Court for Howard County, Maryland. (ECF No. 20-2). On July 12, 2015, the state court denied the motion based on its view that petitioner waived the allegations of error presented "because [he] has had several prior opportunities to raise the allegations therein but intelligently and knowingly failed to do so." (ECF No. 20-5). The court concluded that it was "not in the interest of justice to reopen post conviction proceedings." *Id*. Petitioner's application for leave to appeal the ruling was denied by the Court of Special Appeals of Maryland. (ECF No. 20-6).

In March of 2013, petitioner was informed by the State of Maryland that the trial testimony of Agent Malone would be sent to the Department of Justice for review of the microscopic hair comparison analysis testimony. (ECF No. 17-1 at 24). The Department of Justice issued the results of that review in September of 2014 and confirmed that a report or

testimony regarding microscopic hair comparison analysis containing erroneous statements was used in petitioner's criminal trial.  (*Id.* at 1).

On May 20, 2014, petitioner filed a petition for writ of actual innocence in the Circuit Court for Howard County.  (ECF No. 20-7 at 1).  On January 9, 2015, a hearing was held on the petition for actual innocence.[1]  (ECF No. 20-12).  At the hearing, petitioner attempted to withdraw the matter without prejudice because the Fourth Circuit had granted authorization for petitioner to file a second or successive petition in this court.  (*Id.* at 6–7).  The state court noted that the only claim asserted in the actual innocence petition was the claim regarding the microscopic hair analysis admitted into evidence at petitioner's trial.  (*Id.*)  The court then granted the State's motion to dismiss the petition on the grounds that petitioner had not asserted actual innocence[2] in the petition and that he had admitted his guilt to the crimes for which he was convicted on three prior occasions.  (*Id.* at 15–16).  Petitioner did not appeal this decision.

On June 15, 2015, following this court's order staying proceedings to permit exhaustion of the claims asserted, petitioner filed a motion to reopen state post-conviction proceedings in the Howard County Circuit Court.  (ECF No. 42-3).  In his motion to reopen, petitioner claimed that Agent Malone's testimony at trial overstated the reliability of the hair comparison analysis prejudicing his case, and that the prosecutor engaged in prejudicial misconduct by presenting Malone's testimony.  (*Id.*)

---

[1] At the hearing, the court explained the purpose of a petition for a writ of actual innocence as follows:

> Now, the writ of actual innocence process is fairly new in the scheme of things in the state of Maryland.  And the purpose of it is to provide the possibility of relief in very narrow areas for those people who maintain that they are actually innocent.  And that it really focuses on . . . that there is newly discovered evidence.

(ECF No. 20-12 at 2–3; *see also* Md. Crim. Proc., Code Ann. §8-301).

[2]  Petitioner was asked repeatedly to explain how he was asserting actual innocence when he had admitted on three prior occasions that he had committed the rape for which he was convicted. He provided no direct answer. (ECF 20-12 at 8–9, 10–13).

In response to petitioner's motion to reopen, the State asserted that the testimony provided by Malone in this case was reasonable and not perjurious, and there was substantial other evidence presented at trial to support petitioner's guilt.  (ECF No. 43-2 at 5–6).  The State summarized the evidence produced at trial as follows:

> On July 1, 1985, shortly before noon, Georganne Derick was near the Vantage Point area walking on a bicycle path towards the Columbia Mall.  Petitioner, carrying a towel and wearing blue shorts and socks with white stripes, approached her.  When he was within reach of Ms. Derick, Petitioner put a knife to her throat and put the towel around her head.  Petitioner repeatedly threatened to slit Ms. Derick's throat as he dragged her through the brush off the path.  Petitioner placed a rubber or plastic skull cap over Ms. Derick's face before undressing, sexually assaulting, and raping her.  During the events surrounding the rape, Ms. Derick lied to Petitioner and told [him] that she was a social worker in Baltimore City.

> Detective Witte testified that on August 26, 1985, Ms. Derick selected a photograph of Petitioner as the man that "could be the guy" during a photographic array including seven photos.  Petitioner's photograph was the only one that Ms. Derick singled out, but she subsequently advised that any of three other photographs could have been the rapist.  At trial, Ms. Derick positively and emphatically identified Petitioner as her rapist.

> On August 26, 1985, Howard Count Police Officer Martin Eppard arrested Petitioner as he was jogging out of [a] bicycle path onto Little Patuxent Parkway near Vantage Point Road.  This was the same area and the same path where Petitioner raped Ms. Derick on July 1, 1985.  Upon his arrest, Petitioner was carrying a folded towe[l] wrapped around a knife.  Petitioner was also wearing sneakers, white socks with blue stripes, and blue running shorts when he was arrested.  During the trial, Ms. Derick identified those articles of clothing as looking like the items he wore during the rape.

> Jamal Jawara, a man who was incarcerated with Petitioner in the months preceding this trial also testified for the State.  Mr. Jawara testified that Petitioner offered him "five hundred dollars to make sure that [Miss Derick] . . . did not appear in court."  Petitioner was seeking assistance because "he felt as though that if Miss Derick came to court to testify against him that she could identify him as the one who raped her."  Petitioner told Mr. Jawara that Ms. Derick worked in Baltimore City.  Petitioner provided to Mr. Jawara a note with Ms. Derick's physical description written on it.  Petitioner stipulated that he wrote that description.

> Petitioner also testified in his defense.  Petitioner denied raping Ms. Derick or
> having ever seen her prior to the trial.  He explained the note containing Ms.
> Derick's description as a mere dictation of Mr. Jawara's description of Ms.
> Derick.  Petitioner admitted that he had not received any writings describing
> Ms. Derick, where she lives, or her occupation.  Petitioner also denied
> remembering anything specific about his activities on July 1, 1985.  However,
> knowing that police had receipts of his purchases, Petitioner did admit to
> owning "a rubber skull type device, as described by Miss Derick" that he
> purchased at a store that sells theatrical makeup kits.  Petitioner advised that he
> made the purchase because he was "going to case a course as an elective in
> theatrics."  Petitioner also admitted to purchasing costume sideburns, a
> chinbeard, hairspray and a makeup kit.

(ECF No. 42-2 at 1–3 (transcript cites omitted)).

The testimony provided by Agent Malone in petitioner's case was that a single "head hair" found on Ms. Derick's dress had the "exact same twenty characteristics and the exact same arrangement as the head hairs of Mr. Gray." (*Id*. 5).  Malone then concluded that the hair found on Ms. Derick's dress "microscopically matches the head hairs of Mr. Gray." (*Id*.).  The State argued, however, that Malone's testimony, when viewed in its totality, did not overstate the evidence and included a warning to the jury against drawing any conclusions that his testimony was mathematically certain.  (*Id*. at 6).  The State argued that the other evidence against petitioner was overwhelming and he would have been convicted absent Malone's testimony.  (*Id*. at 6–7).

The State also noted that petitioner had admitted his guilt of the crime after the trial's conclusion.  (*Id*. at 7).  First, during an interview with Agent Russell Cook for purposes of petitioner' pre-sentence investigation, petitioner admitted his guilt and explained that he was "angry inside at his first wife, his father and because he felt he was a failure at his second marriage."  (*Id*.)  Cook further noted that petitioner expressed "a great deal of remorse for what he put the victim through."  (*Id*.)  Second, petitioner wrote in a letter dated October 3, 1989, addressed to the Honorable Robert Fisher that his "behavior was inexcusable towards my victim

and I am earnestly remorseful, for my past behavior." (*Id.*) Lastly, petitioner wrote a letter dated

November 10, 2007, to the Honorable Diane O. Leasure, in which he stated that he was "horribly

embarrassed and terribly ashamed of my crime and have worked relentlessly to turn my life

around, because of my remorse." (*Id.*)

On August 5, 2015, the post-conviction court denied the motion to reopen, noting that:

> The Court's review of the pleadings and the record in the instant matter
> satisfies the Court that the now disgraced witness did not present testimony
> through which he affirmatively excluded any other person from being a
> possible contributor of the hair in question. Additionally, the Court is taking
> into consideration that the State produced significant additional evidence of the
> Defendant's guilt, including the victim's affirmative in court identification of
> the Defendant as the person who raped her at knife point.

> The Defendant's allegations of prosecutorial misconduct relate to his request
> for the Court to exercise revisory power over the case. The Defendant
> advances little, if any, arguments of prosecutorial misconduct that have not
> been alleged in some earlier filing that has been denied. None of the
> allegations, even if new, taken individually or taken collectively justify
> allowing the post-conviction petition to be re-opened.

> Having considered the submissions of the Defendant and the attachments
> thereto, the response by the State and the record in the above captioned case
> the Court finds that it is not in the interests of justice to re-open the post-
> conviction proceedings.

(ECF No. 42-4 at 1–2). No hearing was held on the motion to re-open.

Petitioner filed an application for leave to appeal with the Court of Special Appeals On

August 17, 2015. (ECF No. 42-5). After petitioner filed a motion for dismissal of appeal on

May 18, 2016, the Court of Special Appeals dismissed the application for leave to appeal on May

25, 2016. (ECF No. 42-6).

On June 25, 2015, petitioner filed a motion to correct illegal sentence with the state

circuit court. (ECF No. 42-7). In that motion, petitioner alleged his sentence of "natural life" is

illegal under state law. (*Id.*). The state court denied the motion on August 5, 2015. (ECF No.

7

42-9).  Petitioner's application for leave to appeal the denial of the motion was dismissed by the appellate court because he failed to file a brief.  (ECF No. 42-10).  The Court of Appeals of Maryland denied petitioner's request for review of the same case.  (*Id*.).

Allegations in this court

Petitioner asserts the following claims in his petition for writ of habeas corpus: the prosecution committed misconduct by introducing erroneous statements regarding microscopic hair comparison analysis at his trial; the prosecution committed misconduct by misrepresenting the victim's ability to identify him and with respect to the jail-house informant; petitioner was denied his Sixth Amendment right to counsel; petitioner was the subject of an illegal search and seizure; and petitioner was charged in violation of due process.  (ECF No. 1 at 6–15).

Respondents assert that the only claim asserted in the instant petition that falls within the purview of 28 U.S.C. §2244(b)(3)(C) is that the prosecution committed misconduct by introducing erroneous statements regarding microscopic hair comparison analysis at his trial. (ECF No. 42 at 6–7).  They further assert that this is the only ground for which petitioner arguably met the foundational pleading requirements of Section 2244(b) and that this ground is procedurally defaulted due to petitioner's withdrawal of his application for leave to appeal the state court's denial of the motion to reopen post-conviction proceedings for consideration of the claim.  (*Id*. at 7, 9–10).  In the alternative, respondents assert that the post-conviction court's denial of the defaulted claim was reasonable.  (*Id*. at 10–14).

**Standard of Review**

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  The federal habeas statute at 28 U.S.C. § 2254 sets forth a highly deferential standard for evaluating state-court rulings *Lindh v.*

*Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005).  This

standard is "highly deferential" and "difficult to meet." *Cullen v. Pinholster*, 563 U.S. 170, 181

(2011); *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on

the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the

United States;" or 2) "resulted in a decision that was based on an unreasonable determination of

the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254 (d).

A state adjudication is contrary to clearly established federal law under  § 2254(d)(1) where the

state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a

question of law," or 2) "confronts facts that are materially indistinguishable from a relevant

Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v.*

*Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1),  a "state court's

determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

jurists could disagree' on the correctness of that decision." *Harrington*, 562 U.S. at 88 (quoting

*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, "an unreasonable application of

federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at

101 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable

merely because the federal habeas court would have reached a different conclusion in the first

instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the

record might disagree about the finding in question," a federal habeas court may not conclude

that the state court decision was based on an unreasonable determination of the facts. *Id*. **"[A]**

federal habeas court may not issue the writ simply because [it] concludes in its independent

judgment that the relevant state-court decision applied established federal law erroneously or

incorrectly." *Renico v. Lett,* 559 U.S 766, 773 (2010) (quoting *Williams*, 529 U.S. at 411).

The habeas statute provides that "a determination of a factual issue made by a State court

shall be presumed to be correct," and the petitioner bears "the burden of rebutting the

presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where

the state court conducted an evidentiary hearing and explained its reasoning with some care, it

should be particularly difficult to establish clear and convincing evidence of error on the state

court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where

state courts have "resolved issues like witness credibility, which are 'factual determinations' for

purposes of Section 2254(e)(1)." *Id*. at 379.

With regard to successive petitions, 28 U.S.C. §2244(b) provides that:

> (1)A claim presented in a second or successive habeas corpus application
> under section 2254 that was presented in a prior application shall be dismissed.

> (2) A claim presented in a second or successive habeas corpus application
> under section 2254 that was not presented in a prior application shall be
> dismissed unless--

>> (A) the applicant shows that the claim relies on a new rule of
>> constitutional law, made retroactive to cases on collateral review by the
>> Supreme Court, that was previously unavailable; or

>> (B)(i) the factual predicate for the claim could not have been discovered
>> previously through the exercise of due diligence; and (ii) the facts
>> underlying the claim, if proven and viewed in light of the evidence as a
>> whole, would be sufficient to establish by clear and convincing evidence
>> that, but for constitutional error, no reasonable factfinder would have
>> found the applicant guilty of the underlying offense.

(3)(A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

\*\*\*\*\*\*\*\*\*\*

(C) The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection.

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies.  *See Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489–91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).  A procedural default also may occur where a state court declines "to consider the[] merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

As the Fourth Circuit has explained:

If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim.  *See Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991).  A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  *Id.* at 735 n.1.

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and

prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 495–96 (1986); *Breard*, 134 F.3d at 620. "Cause" consists of "'some objective factor external to the defense [that] impeded counsel's efforts' to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, F, 314 (1995).

The miscarriage of justice standard is directly linked to innocence. *Id*. at 320. Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id*. at 315. The miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U. S. at 496. "'To be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial.' *Calderon v. Thompson,* 523 U.S. 538, (1998) (quoting *Schlup*, 513 U.S. at 324).

New evidence may consist of "exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (citation omitted). The new evidence must be evaluated with any other admissible evidence of guilt. *Wilson v. Greene*, 155 F.3d 396, 404–05 (4th Cir.), *appl. for stay and cert. denied sub. nom. Wilson v. Taylor*, 525 U.S. 1012 (1998). The new evidence must do more than undermine the finding of guilt; it must affirmatively

demonstrate innocence.  *Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir. 1999).   To invoke

the actual innocence exception to the procedural default doctrine, a defendant "must show that it

is more likely than not that no reasonable juror would have convicted him in light of the new

evidence."  *Schlup*, 513 U.S. at 327.   "[When] a constitutional violation has probably resulted in

the conviction of one who is actually innocent, a federal habeas court may grant the writ even in

the absence of a showing of cause for the procedural default." *Murray*, 477 U.S. at 496, *see also*

*Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003).

### Analysis

The Fourth Circuit's grant of petitioner's §2244 application for a successive writ provides

no explanation regarding the basis for granting the application; however, it is clear that "if any

claim meets the statutory threshold" the appellate court "will grant the [pre-filing authorization]

motion and allow [the petitioner] to file the Proposed Application in its entirety."  *In re Williams*,

330 F. 3d 277, 281 (4th Cir. 2003), citing *United States v. Winestock*, 300 F.3d 200 (4th Cir.

2003).   The appellate court does not conduct a merits review of the claims asserted in the

motion; rather, the pre-filing authorization motion must simply show "possible merit . . . that the

claims in a successive application will satisfy 'the stringent requirements for the filing of a

second or successive petition.'" *Williams* at 281–82, quoting *Bennett v. United States*, 119 F.3d

468, 470 (7th Cir. 1997).   Review of each of petitioner's claims reveals only one that complies

with the requirements in §2244(b).

In petitioner's first claim of prosecutorial misconduct he alleges that during her direct

testimony the victim was shown the photographic array and asked to select the photograph of the

person who she believed committed the rape.  (ECF No. 2 at 1–4).  Petitioner's trial attorney was

then prohibited from arguing that the victim could not find the photograph among those

13

displayed after the State's Attorney objected to the argument.  (*Id*.).  Petitioner claims this caused

jury confusion as evidenced by notes being sent from the jury to the court concerning the

victim's identification and the photographs.  (*Id*.).  Petitioner further argues there was

prosecutorial misconduct regarding the jailhouse informant who testified at trial. (*Id*. at 6–17).

He claims that the State's Attorney misled the court by stating that no information was given by

the informant after the informant met with the State's Attorney.  The factual basis for this ground

is not newly discovered evidence.

The second claim asserted by petitioner is that his Sixth Amendment right to counsel was

violated when a jailhouse informant provided information to the State and petitioner's counsel

was not present.  (ECF No. 2 at 17–24).  The factual basis for this ground is also not newly

discovered evidence.

The third claim asserted by petitioner is that his Fourth Amendment rights were violated

when a false statement regarding the evidence against him was used in support of a finding of

probable cause to issue a search warrant.  (ECF No. 2 at 25–37).  The alleged statement was that

the FBI confirmed that one head hair found on the victim's dress matched petitioner's hair.

Petitioner's trial attorney argued this point at trial and pointed out that the statement was false

because the FBI report did not say what the warrant application reflected. (*Id*. at 26.)  In rebuttal,

the State's Attorney argued that even if the statement in question was excluded, there was other

evidence to support a finding of probable cause in light of the victim's identification of petitioner

to Detective Witte.  (*Id*. at 29).  Petitioner argues that the State's Attorney misled the court

regarding the amount of evidence that existed to support a finding of probable cause because in

her identification of petitioner, the victim was not certain about petitioner being the perpetrator.

(*Id*.).  Again, the factual basis for this claim is not newly discovered evidence.

Petitioner's fourth claim is that his Fifth, Sixth, and Fourteenth Amendment rights were violated when the defense was denied a grand jury transcript for purposes of cross-examination of the State's witnesses.  (ECF No. 2 at 48–52).  Petitioner claims, as did his counsel at trial, that because the State determines when grand jury proceedings are recorded, their refusal to do so vitiates the criminal defendant's access to potentially exculpatory evidence, prior inconsistent statements by witnesses, and other bases for cross-examination of witnesses at trial.  (*Id*.).  When this claim was raised at trial, the State's Attorney confirmed that the only witness brought before the grand jury is the police officer who delivers hearsay testimony regarding the crime.  (*Id*. at 38–39).  The trial court thus observed that the defense would not have anything to use in cross-examination if the grand jury proceedings had been recorded.  (*Id*.).  The factual basis for this claim is not newly discovered evidence.

With respect to the first four claims raised, petitioner appears to rely on the argument that he was falsely advised for 18 years that his trial transcript was unavailable or destroyed.  (ECF No. 1-1).  The unavailability of the transcripts following petitioner's direct appeals and initial post-conviction challenges does not constitute newly discovered evidence for purposes of this court's review.  This is particularly true where, as here, petitioner has been incarcerated for 29 years and he does not assert the transcripts were missing during the first 11 years of his imprisonment.

In his fifth and final claim, petitioner asserts a rather complex claim of prosecutorial misconduct.  (ECF No. 3).  He asserts that the State's Attorney engaged in perpetrating a continuing perception that several crimes were committed by petitioner and claims this was accomplished by including five counts in the indictment for the same crime (*id*. at 2–3); by stating to the judge outside of the presence of the jury that petitioner had been charged in another

criminal case (*id*. at 15–16); and by arguing at sentencing about the pervasiveness of sexual assault crimes against women in Howard County, Maryland (*id*. at 10–11).  Petitioner contends this prejudiced him for purposes of the sentencing guidelines.  He further alleges that allowing Agent Malone to present false and exaggerated testimony regarding microscopic hair comparisons constituted prosecutorial misconduct.  (*Id*. at 3, 8).  Petitioner concludes that the laboratory evidence demonstrates he is "actually innocent" of the additional crimes to which the "impermissible consideration of the sentence has been assigned."  (*Id*. at 3).  This claim, to the extent it relies on the newly discovered report from the Department of Justice, is the only claim that fits the criteria for §2244 review and provides the basis for the Fourth Circuit's order granting authorization for a successive petition.

In this court's order of November 16, 2015, staying this case for purpose of allowing petitioner to present his claim of newly discovered evidence to the state courts, he was advised that any denial of a motion to reopen post-conviction proceedings would have to be appealed to the highest state court with authority to consider the claim.  (ECF No. 25).  This court further noted that the statement provided in correspondence to petitioner from the Department of Justice indicating that the United States was waiving reliance on defenses of statute of limitations and procedural default in the context of claims regarding flawed forensic evidence, did not obligate the State of Maryland to also waive those defenses.  (*Id*. at n.1; *see also* ECF No. 24 at 2).

As noted previously, petitioner's motion to reopen post-conviction proceedings for consideration of the sole claim pending before this court was denied.  Although petitioner filed an application for leave to appeal that denial, he withdrew it before the appellate court had the opportunity to review the merits of the claim.  This claim is therefore procedurally defaulted and may not be considered by this court unless a manifest injustice would result from a failure to

16

review the claim.

To the extent the claim can be read to imply that inclusion of the microscopic hair analysis evidence renders the verdict in the criminal case unreliable, the claim fails. The testimony provided by Malone included cautionary statements to the jury that hair analysis was unlike a fingerprint and could not be used to positively identify a perpetrator. Additionally, he readily admitted on cross-examination that the hair analysis he performed was not an exact science. In its rejection of petitioner's motion to re-open, the state court noted that "the State produced significant additional evidence of the Defendant's guilt, including the victim's affirmative in court identification of the Defendant as the person who raped her at knife point." (ECF No. 42-4 at 1–2).

Petitioner cannot claim actual innocence with regard to the offense – first degree rape – for which he was convicted. Although he uses the term "actually innocent" in several of the pleadings filed, it is not at all clear how he is employing that term. Indeed it appears that petitioner confuses the review at issue in this case with sentencing guideline issues that arise in Motions to Vacate filed pursuant to 28 U.S.C. §2255 in federal criminal cases. (*See e.g.*, ECF No. 3 at 12–13). The "other crimes" argument petitioner raises is relevant in those federal criminal cases where a prior conviction is used to enhance federal sentencing guidelines for a subsequent federal offense. Such analysis has no place in the instant case, as it concerns a state conviction and petitioner was only sentenced for the offenses for which he was found guilty. Petitioner does not claim, nor can he, that he is actually innocent; he has not only admitted guilt and responsibility for the crime in the context of the state court proceedings, he also admits responsibility in this court. (*See* ECF No. 3 at 14).

This court finds that the merits of the procedurally defaulted claim do not have to be

reached in order to avoid a manifest injustice in this case.  The petition for writ of habeas corpus will be denied.  When a district court dismisses a habeas petition solely on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rose v. Lee,* 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). If the district court dismisses a habeas petition on the merits, a certificate of appealability will not issue unless the petitioner can demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Ivey v. Catoe*, 36 F. App'x 718, 722 (4th Cir. 2002) (quoting *Slack*, 529 U.S. at 484). Petitioner has failed to meet the standards for issuance of a certificate of appealability.[3]

     A separate order denying the writ and denying a certificate of appealability follows.

<u>October 28, 2016</u>               <u>      /S/         </u>
Date                           Catherine C. Blake
                               United States District Judge

---

[3] He is free to seek a certificate of appealability from the Fourth Circuit.

18